IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LOREN RANCOURT,

               Plaintiff,

    vs.

HON. CHIEF JUSTICE JOEL
BOLGER, *et al.*,

              Defendants.

Case No. 3:21-cv-00189-JMK

**ORDER GRANTING
DEFENDANTS' MOTIONS TO
DISMISS**

       Before the Court are three Motions to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6). At Docket 19 is a Motion to Dismiss by Defendant Michael

Shaffer; at Docket 22 is a Motion to Dismiss by Defendants Joel Bolger, Gregory Miller,

Pamela Washington, Heather Fuentes, and Ryan Montgomery-Sythe; and at Docket 27 is

a Motion to Dismiss by Defendant Municipality of Anchorage ("the Municipality").

Mr. Rancourt filed a combined opposition at Docket 30.[1] Defendants Shaffer and the

Municipality replied at Docket 33. Defendants Bolger, Miller, Washington, Fuentes, and

Montgomery-Sythe replied at Docket 34. Mr. Rancourt filed a "Supplementary Exhibit"

---

[1] Mr. Rancourt filed a Notice at Docket 31 acknowledging that his opposition violated the Local Rules, in particular for being overlength. The Court appreciates the Notice and accepts Mr. Rancourt's opposition as filed regardless of those violations.

at Docket 38.  For the following reasons, the Court **GRANTS** the Motions to Dismiss at Dockets 19, 22, and 27.

## I.  BACKGROUND

Loren Rancourt, representing himself, filed his First Amended Complaint ("FAC") on October 15, 2021, in which he alleges various civil rights violations under 42 U.S.C. § 1983 by persons involved in state court cases in which he was or is a party.[2] For all defendants and claims, Mr. Rancourt's FAC states that "the policy or custom of this official's government agency violates my rights, and I seek injunctive relief," and he appears to name these defendants in their official capacity.[3]   However, Mr. Rancourt requests monetary damages, in addition to "an order requiring defendant(s) to void 3AN-18-00830CI, S-1777, cease prosecution (3AN-18-11635CR), void 3AN-18-06027CI, [and] cease removing children under 25.24.150(G)(H)."[4]  He also requests declaratory relief that "[AS] 25.24.150(G)(H) violates rights (criminal punishments, due process, indentured servitude, life, liberty, happiness)" and seeks revisions to various municipal and state laws.[5]

The Court takes judicial notice[6] of several state court matters relevant to Mr. Rancourt's FAC:

---

[2] *See generally* Docket 9.   The Court previously dismissed without prejudice Mr. Rancourt's original Complaint. *See* Dockets 1; 5.

[3] Docket 9 at 1–3.

[4] *Id.* at 30–31.

[5] *Id.* at 31.

[6] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact. . . ." BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts routinely take judicial notice of publicly available records . . . from other court proceedings.") (citing *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (additional citation omitted)); Fed. R. Evid. 201.

(1)     An active criminal case, 3AN-18-11635CR, in which Mr. Rancourt is charged with violating a domestic violence protective order, failure to appear, and making false statements under oath ("the pending criminal case");[7]

(2)     Four petitions for review and one petition for hearing seeking appellate review of judicial actions in his pending criminal case, all of which were denied;[8]

(3)     A consolidated appeal in the Alaska Supreme Court ("the civil appeal") that upheld two civil orders:  one granting a long-term domestic violence protective order against him (3AN-18-00830CI) ("domestic violence case"), and one awarding sole custody of Mr. Rancourt's child to the child's mother and ordering Mr. Rancourt to pay child support (3AN-18-06027CI) ("child custody case").[9]

Mr. Rancourt's first three claims are against the Municipality and the Municipal Prosecutor, Michael Shaffer, for prosecuting the pending criminal case. Mr. Rancourt alleges that Defendant Shaffer violated his "right to life, liberty, and security of persons" by filing charges against him in state court.[10]  He alleges that Defendant Shaffer

---

[7] *Mun. of Anchorage v. Rancourt*, 3AN-18-11635CR (Alaska Dist. Ct. filed Dec. 4, 2018).

[8] *Rancourt v. Mun. of Anchorage*, No. A13591 (Alaska Ct. App. April 16, 2020); *Rancourt v. Mun. of Anchorage*, No. A13532 (Alaska Ct. App. Dec. 9, 2019); *Rancourt v. Mun. of Anchorage*, No. A13531 (Alaska Ct. App. Dec. 9, 2019); *Rancourt v. Mun. of Anchorage*, No. A13502 (Alaska Ct. App. Oct. 17, 2019); and *Rancourt v. Mun. of Anchorage*, No. S17671 (Alaska Feb. 4, 2020).

[9] *See Loren R. v. Sharnel V.*, No. S-17198, 2020 WL 4200124 (Alaska July 22, 2020). The Court understands Mr. Rancourt's reference to "S-1777" in his Complaint as referring to the Memorandum Opinion and Judgment issued in this appeal, which was listed as "MO&J No. 1777."

[10] Docket 9 at 4–5.

violated his due process rights by "conspir[ing] with [Defendant Ryan Montgomery-Sythe] to prevent Plaintiff from access to court" when Defendant Shaffer filed perjury charges against Mr. Rancourt on "information he knew to be false," namely, financial documents that Mr. Rancourt provided to the court clerk.[11] Mr. Rancourt alleges that Defendant Shaffer violated his "right to life" by filing failure to appear charges against him when he missed a pretrial hearing due to "a stay home advisory" after the 2018 earthquake.[12] Mr. Rancourt asserts a claim against the Municipality by alleging that "[t]he policy or custom of [Defendant Shaffer's] government agency violates my rights,"[13] and includes the Municipality as "Defendant Shaffer's agency" in his claims against Defendant Shaffer.[14] Specifically, Mr. Rancourt alleges that "Defendant Shaffer's agency schemes to conceal a parent's right to protect children in not providing an emergency exception to AMC 8.30.105(A)(1)," which is the statute under which Defendant Shaffer charged him with violating a civil protective order.[15]

Mr. Rancourt's fourth, fifth, sixth, eighth, ninth, fourteenth, fifteenth, sixteenth, seventeenth, and nineteenth claims are against Alaska Superior Court Judge Gregory Miller and relate to Mr. Rancourt's child custody case, which was ultimately upheld in the civil appeal. Mr. Rancourt alleges that Defendant Miller violated his "criminal process" rights by making a finding of domestic violence in Mr. Rancourt's child

---

[11] *Id.* at 6.
[12] *Id.* at 7.
[13] *Id.* at 2.
[14] *Id.* at 4–5.
[15] *Id.* at 5.

custody case and by "coercing plaintiff to testify without: counsel, notice, or witnesses."[16] He alleges that Defendant Miller violated his "right to freedom from cruel and unusual punishment" by ordering Mr. Rancourt's child to be "removed for at least 9 months" and requiring conditions for supervised visitation.[17] In multiple counts, Mr. Rancourt alleges that Defendant Miller violated his due process rights by making "a paternity declaration without any notice to Plaintiff" and "order[ing] child support with contested paternity";[18] holding a custody hearing without adequate notice of the allegations against him and "schem[ing] to prevent affirmative defenses" in the child custody case;[19] and "seiz[ing] a child without a probable cause hearing."[20] He alleges that Defendant Miller violated his "freedom from indentured servitude" by ordering child support payments.[21] He alleges that Defendant Miller violated his "freedom of speech" when he "found protected speech to be 'Domestic Violence,' having no authority to find D.V.: without 6th amendment protections, using a low evidentiary standard," that is, when Defendant Miller admitted Mr. Rancourt's text messages as evidence against him.[22] He alleges that Defendant Miller violated his "freedom from unreasonable seizures" when he "unreasonably seized a child until the 'Domestic Violence' intervention is paid and completed," and ordered that Mr. Rancourt complete a class that cost $1,800.[23] He alleges that Defendant Miller

---

[16] *Id.* at 8.
[17] *Id.* at 9–10.
[18] *Id.* at 11.
[19] *Id.* at 14–15.
[20] *Id.* at 16.
[21] *Id.* at 24.
[22] *Id.* at 25.
[23] *Id.* at 26.

violated his "freedom from invasion of privacy" when he "ordered every interaction between Plaintiff and minor child be monitored, in person, by a third party supervisor."[24] He alleges that Defendant Miller violated the Double Jeopardy Clause of the United States Constitution when he "issued criminal punishments based on his 'guilty' conviction," while he was "in criminal trials, had been imprisoned, and faced further criminal prosecution."[25]

Mr. Rancourt's seventh claim is against former Alaska Supreme Court Chief Justice Joel Bolger. Mr. Rancourt alleges that Defendant Bolger violated his due process rights by "void[ing] an entire record of preserved legal arguments with no authority to do so," "consipir[ing] to aid fraudulent concealment" by suppressing evidence, and "forc[ing] litigants in criminal hearings to testify in civil hearings" in Mr. Rancourt's civil appeal before the Alaska Supreme Court.[26]

Mr. Rancourt's tenth and twelfth claims are against Anchorage District Court Judge Pamela Washington and again relate to his child custody case, which ultimately was upheld in the civil appeal. He alleges that Defendant Washington violated his right to "life, liberty and security of persons" by "order[ing] a minor child to the sole care of Sharnel Vale," despite Mr. Rancourt's concerns of "child neglect or abuse occurring in Sharnel Vale's home," and by "conspir[ing] with Defendant Fuentez and Miller to prevent Plaintiff presenting legitimate safety concerns of minor child to the court."[27]   He alleges that

---

[24] *Id.* at 27.
[25] *Id.* at 29.
[26] *Id.* at 12–13.
[27] *Id.* at 17.

Defendant Washington violated his due process rights when she "removed a minor child from Plaintiff's care in a hearing without discovery (fraudulent concealment)."[28]

Mr. Rancourt's eleventh and eighteenth claims are against state court clerk Ryan Montgomery-Sythe and relate to processing paperwork that Mr. Rancourt attempted to file with the Alaska court system. He alleges that Defendant Montgomery-Sythe violated his due process rights when he "returned petitions with no authority to do so," and erroneously "demanded financial disclosures to Plaintiff in order to gain access to the Court of Appeals."[29] He alleges that Defendant Montgomery-Sythe violated the Fourth Amendment when he "ordered a search of Plaintiffs' finances before he could be heard in the Court of Appeals," in violation of "Appellate Rule 209(b)."[30]

Finally, Mr. Rancourt's thirteenth claim is against state court clerk Heather Fuentes and again relates to processing Mr. Rancourt's filings with the Alaska court system. He alleges that Defendant Fuentes violated his right to due process by withholding petitions, motions, and evidence.[31] Specifically, he alleges that she "withheld petitions until Plaintiff was served a DVPO order," "sent back petitions . . . as being under 'the wrong case number,'" and sent back his notice of appeal.[32]

---

[28] *Id.* at 20.
[29] *Id.* at 19.
[30] *Id.* at 28.
[31] *Id.* at 22.
[32] *Id.* at 22–23.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint because it fails to state a claim upon which relief can be granted. This means that the facts alleged by the complaint do not amount to a claim under any cognizable legal theory.[33] To survive a motion to dismiss, the complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[34] As such, the Court assumes that the facts alleged in the complaint are true and construe them in the light most favorable to the nonmoving party.[35] "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."[36] However, conclusory statements, unwarranted inferences, and naked assertions of law will not suffice; "they must be supported by factual allegations" to survive a motion to dismiss.[37]

Overall, dismissal for failure to state a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[38] A court may dismiss a complaint based on an affirmative defense, but only if "the defendant shows some obvious bar to securing relief on the face of the

---

[33] *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).
[34] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[35] *Id.* (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).
[36] *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).
[37] *Ashcroft*, 556 U.S. at 679.
[38] *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).

complaint."[39]  In this situation, a motion to dismiss will only be granted if the affirmative defense "raises no disputed issues of fact."[40]

## III.  DISCUSSION

Mr. Rancourt's Complaint is based on the actions of prosecutors, judges, and court personnel that were taken as part of their official duties.  As such, Defendants are immune from Mr. Rancourt's claim for damages under 42 U.S.C. § 1983.  Mr. Rancourt's request for injunctive relief as it relates to the actions of the judges and court personnel is barred by the language of 42 U.S.C. § 1983.  Last, Mr. Rancourt's request for injunctive relief is barred by both the *Rooker-Feldman* and *Younger* abstention doctrines.

### A.  Defendants Bolger, Miller, and Washington are Entitled to Absolute Judicial Immunity

Mr. Rancourt has brought claims against judges with whom he disagrees.  However, judges and those performing judge-like functions have absolute immunity from 42 U.S.C. § 1983 damage suits for judicial acts.[41]  Since 1872, the Court has recognized that in order to ensure the proper administration of justice, a judge "in exercising the authority vested in him, be free to act upon his own convictions, without apprehension of

---

[39] *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense.")).

[40] *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

[41] *See Stump v. Sparkman*, 435 U.S. 349, 359 (1978) (holding that judge's order authorizing sterilization of 15-year-old girl without her knowledge was unconstitutional, but judge was immune from suit because order was a judicial act); *Ryan v. Bilby*, 764 F.2d 1325, 1328 n.4 (9th Cir. 1985) ("Judicial immunity is not limited to judges.  All those who perform judge-like functions are immune from civil damages liability.") (citations omitted).

personal consequences to himself."[42]  A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."[43]  To wit, absolute judicial immunity applies "no matter how erroneous the [alleged] act may have been, how injurious its consequences, how informal the proceedings, or how malicious the motive."[44]

Thus, a judge only lacks immunity if (1) the alleged acts were non-judicial in nature, and (2) the judge acted in the "clear absence of all jurisdiction."[45]  Both prongs of this test are construed in favor of immunity.[46]  To determine if a given action is judicial, the court will analyze whether:

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.[47]

To determine if the judge acted within jurisdiction, the court will analyze "whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction."[48]

---

[42] *Bradley v. Fisher*, 80 U.S. 335, 347 (1872); *see also Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) ("Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts.") (citing *id.*).

[43] *Stump*, 435 U.S. at 356–57 (quoting *Bradley*, 80 U.S. at 351).

[44] *Trapp v. State*, 53 P.3d 1128, 1130 (Alaska 2002) (quoting *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)).

[45] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (quoting *Stump*, 435 U.S. at 356–57).

[46] *Ashelman*, 793 F.2d at 1076.

[47] *Id*. at 1075–76.

[48] *Id*. at 1076.

Here, Mr. Rancourt alleges conduct that is clearly judicial and under the state court's jurisdiction. His claims against Judge Miller and Judge Washington, described above, all involve specific findings and actions taken by each Judge as the presiding official in Mr. Rancourt's child custody case and/or domestic violence case. The Alaska Superior Court and the Alaska District Court have subject matter jurisdiction over these cases.[49] The claims against Chief Justice Bolger challenge his findings and conduct in Mr. Rancourt's civil appeal. The Alaska Supreme Court has appellate jurisdiction over Mr. Rancourt's child custody case and domestic violence case.[50] The findings of judges in cases which they preside over are, definitionally, "normal judicial function[s]," and here, the decisions by Judge Washington, Judge Miller, and Justice Bolger were clearly issued under the proper jurisdiction of the Alaska District Court, Alaska Superior Court, and Alaska Supreme Court, respectively.[51]

Even Mr. Rancourt's various conspiracy allegations—assuming they are true—would be considered judicial acts within the court's jurisdiction. In *Ashelman v. Pope*, the Ninth Circuit overruled its previous decision in *Beard v. Udall* that held a judge liable for conspiring to incarcerate a defendant.[52] In overruling that case, the Ninth Circuit noted that the "ultimate act" produced by the conspiracy was a temporary restraining order,

---

[49] *See* Alaska Stat. § 22.10.020; Alaska Stat. § 22.15.030; *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989) (finding judicial immunity in divorce case because Alaska state courts are courts of general jurisdiction and may preside over divorce proceedings).

[50] *See* Alaska R. App. P. 520.

[51] *Ashelman*, 793 F.2d at 1075; *New Alaska Dev. Corp.*, 869 F.2d at 1302.

[52] *Ashelman*, 793 F.2d at 1078 (overruling *Beard v. Udall*, 648 F.3d 1264 (9th Cir. 1981)).

which was judicial in nature because the court had jurisdiction to grant such an order.[53]

Here, Mr. Rancourt alleges that Defendants Miller, Washington, and Bolger conspired to violate his rights by holding a hearing without notice, making certain evidentiary findings that suppressed evidence, and making findings in the case that otherwise prevented his ability to be heard.[54] Here, like in *Beard*, the "ultimate acts" that resulted from the alleged conspiracies were judicial in nature and within the courts' jurisdictions.[55]

Because Defendants Miller, Washington, and Bolger are entitled to absolute judicial immunity, Mr. Rancourt's claims for damages against them are DISMISSED.

## B. Defendants Fuentes and Montgomery-Sythe are Entitled to Absolute Judicial Immunity as Court Clerks

Absolute judicial immunity extends to those persons appointed by the court to "administer the affairs of litigants."[56] Court officials "who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions."[57] This includes the clerk of court and deputy clerks through whom filing petitions or other court documents is done.[58]

Mr. Rancourt alleges that Defendants Fuentes and Montgomery-Sythe violated his rights by incorrectly processing various filings or other paperwork in his state court cases. His allegations directly stem from Defendants' actions in the course of their

---

[53] *Id.* at 1077.
[54] *See* "Background," *supra* at 4–6.
[55] *Ashelman*, 793 F.2d at 1078 ("We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors.").
[56] *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989).
[57] *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quotation omitted) (collecting cases).
[58] *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987).

*Rancourt v. Bolger, et al.*                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                              Page 12
Case 3:21-cv-00189-JMK   Document 40   Filed 04/20/22   Page 12 of 23

employment as court clerks.[59]  Thus, they are entitled to quasi-judicial immunity because they acted as agents of the court and were operating under the court's proper subject matter jurisdiction over Mr. Rancourt's various state court cases.

Because Defendants Fuentes and Montgomery-Sythe are entitled to absolute quasi-judicial immunity, Mr. Rancourt's claims for damages against them are DISMISSED.

## C.    Mr. Rancourt Cannot Bring a Claim for Injunctive Relief Based on the Actions of Defendants Bolger, Miller, Washington, Fuentes, and Montgomery-Sythe

In addition to monetary damages, Mr. Rancourt requests that this Court "void" the civil judgments in 3AN-19-00830CI, 3AN-18-06027CI, and the consolidated civil appeal that upheld those decisions.[60]  This request for relief relates to his claims against Justice Bolger, Judge Miller, and Judge Washington, and potentially relates to his claims against the court clerks, Defendant Montgomery-Sythe and Defendant Fuentes.  He also requests that the Court "cease prosecution" in his pending criminal case, which also potentially relates to his claims against Defendant Montgomery-Sythe and Defendant Fuentes.[61]

Any request for injunctive relief as it relates to Defendants Bolger, Miller, Washington, Fuentes, and Montgomery-Sythe is barred by 42 U.S.C. § 1983 because the

---

[59]  *See* "Background," *supra* at 7.

[60]  Docket 9 at 30–31.

[61]  The Court is unsure whether the conduct alleged in claims eleven, thirteen, and eighteen against Defendants Montgomery-Sythe and Fuentes relate to filings in Mr. Rancourt's civil or criminal cases.  The Court's analysis is unaffected, since any claims for injunctive relief against judicial actions taken by judicial officers are barred by 42 U.S.C. § 1983.

statute states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Mr. Rancourt has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. Thus, he cannot bring an action for injunctive relief against these Defendants because, as discussed, those claims are predicated on actions taken by judicial officers in their official, judicial capacity.

As such, Mr. Rancourt's claims for injunctive relief based on the actions of Defendants Bolger, Washington, Fuentes, and Montgomery-Sythe are DISMISSED.

## D. Defendant Shaffer is Entitled to Absolute Prosecutorial Immunity, and Any Claim Against Him for Malicious Prosecution First Requires a Favorable Ruling

Mr. Rancourt names Municipal Prosecutor Michael Shaffer as a defendant for bringing charges against him with which he disagrees. Prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process."[62] The focus of this inquiry is the nature or function of the prosecutor's activity,[63] and like judicial immunity, prosecutorial immunity is broadly construed.[64] The Supreme Court has decided that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial"—including "evaluating evidence and interviewing witnesses as he prepares for trial"—are

---

[62] *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005).

[63] *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986).

[64] *Id.* at 1078.

entitled to absolute immunity.[65]  Similarly, "[w]here a prosecutor acts as an advocate 'in initiating a prosecution and in presenting the state's case,' absolute immunity applies."[66]

Thus, Defendant Shaffer is not a proper defendant in this case.  The Ninth Circuit overruled its previous decision in *Beard v. Udall* that held a prosecutor liable for filing charges that he or she knew to be "baseless."[67]  In overruling that case, the Ninth Circuit noted that although the prosecutor initiated a prosecution unauthorized by law, "he had performed a quintessentially prosecutorial act—filing criminal charges" and should have been immune.[68]  Here, Mr. Rancourt claims that Defendant Shaffer violated his rights when he filed three separate criminal charges against him.  This is precisely the type of conduct that is protected by prosecutorial immunity, and Defendant Shaffer enjoys immunity from Mr. Rancourt's claims for damages.

The Court liberally construes Mr. Rancourt's Complaint as including a claim for malicious prosecution under the United States Constitution's Fourth Amendment. However, in order to bring a malicious prosecution claim under the Fourth Amendment, a plaintiff must show that:  (1) the defendant initiated charges against the plaintiff without probable cause; (2) the malicious prosecution resulted in a seizure; and (3) the prosecution

---

[65] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (immunity applied where a prosecutor's administrative error in the plaintiff's specific criminal trial constituted an essential element of the plaintiff's claim).
[66] *Ashelman*, 793 F.2d at 1076 (quoting *Imbler*, 424 U.S. at 431).
[67] *Id*. at 1078 (overruling *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981)).
[68] *Id*. at 1077.

did not end in a conviction. [69]  Because Mr. Rancourt's criminal case is pending, he cannot bring a claim for malicious prosecution.

Mr. Rancourt's claims for damages against Defendant Shaffer are DISMISSED.

## E.  The *Younger* Abstention Doctrine Bars Mr. Rancourt's Claims that Relate to his Pending Criminal Case

Mr. Rancourt's Complaint attacks certain findings and actions in his pending criminal case.  In addition to monetary damages, he requests that this Court issue an "order requiring defendant(s) to cease prosecution" in his pending criminal case. [70]  This request for relief relates to his claims against Defendants Shaffer and the Municipality, and potentially relates to his claims against Defendant Montgomery-Sythe and Defendant Fuentes. [71]

A federal court will not issue an order that interferes with a pending state criminal proceeding except in extraordinary circumstances, "where the danger of irreparable loss is both great and immediate." [72]  This is called the *Younger* abstention doctrine.  *Younger* applies when:

(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an

---

[69]  *Thompson v. Clark*, 596 U.S. ___, No. 20-259, slip op. at 5–6 (2021); *see also id.* at 10–11 (Alito, J. dissenting).

[70]  Docket 9 at 31.

[71]  *See* Docket 9 at 4–7, 19, 22–23, 28.  The Court is unsure whether the conduct alleged in claims eleven, thirteen, and eighteen against Defendants Montgomery-Sythe and Fuentes relate to filings in Mr. Rancourt's civil or criminal cases.  If the conduct relates to his civil cases, those claims are also barred by the *Rooker-Feldman* doctrine, discussed below.

[72]  *Younger v. Harris*, 401 U.S. 37, 45 (1971); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) ("A federal court may abstain under *Younger* in three categories of cases:  (1) parallel, pending state criminal proceedings . . .").

adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding."[73]

The *Younger* abstention doctrine applies both to claims for damages under 42 U.S.C. § 1983 and claims for injunctive and declarative relief.[74]

Here, Mr. Rancourt seeks direct federal intervention in his pending criminal case via an injunction to enjoin the case, an award of damages, and a declaration that an emergency exception is constitutionally required to the laws under which he was charged. He pleads that he is innocent of his perjury charge, pleads an affirmative defense to his failure to appear charge, and challenges the constitutionality of the statute under which he was charged with violating a civil protective order.[75] This is precisely the situation where federal intervention is unwarranted under *Younger*: (1) the state criminal proceeding is ongoing; (2) the state has an important interest in prosecuting violations of its own court orders; (3) Mr. Rancourt can adequately raise his constitutional challenges in the state proceedings; and (4) his requested relief would directly enjoin the proceedings.[76] Mr. Rancourt had not pleaded any danger of great and immediate irreparable harm that would make abstention inappropriate, and he does not argue that the statute is facially

---

[73] *Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019).
[74] *Gilbertson v. Albright*, 381 F.3d 965, 979 (9th Cir. 2004). In general, a claim for damages will be stayed under *Younger* rather than dismissed; however, a court still may dismiss the claim when dismissal is indicated for some other reason. "A damages claim that is plainly frivolous, for example, might not save an action." *Id.* at 982 n.18.
[75] Docket 9 at 4–7.
[76] *See Page*, 932 F.3d at 901–02; *see also Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021) (finding that *Younger* factors were satisfied in challenge to pending state court murder proceeding).

unconstitutional.[77]  He is not in custody or otherwise subject to a deprivation of physical liberty.[78]  If Mr. Rancourt's case proceeds to trial and he is acquitted of the charges, his rights will be fully vindicated.  Mr. Rancourt's allegations suggest that Defendants had a reasonable basis to pursue the charges against him—indeed, Mr. Rancourt states that the perjury charges against him were based on documents that Mr. Rancourt provided the court clerk, that he violated the civil protective order (but that he was justified in doing so), and that he failed to appear due to an emergency stay-at-home order.[79]  While being subject to double jeopardy may give rise to great and irreparable harm, Mr. Rancourt's claim that he was subject to "double jeopardy" because Defendant Miller considered Mr. Rancourt's criminal charges during the child custody case is legally baseless, even assuming the Complaint's factual allegations are true.[80]

In short, Mr. Rancourt's Complaint appears to purely be a collateral attack on his pending criminal case in state court.  This Court will not issue an order that interferes with the pending state criminal when Mr. Rancourt has an adequate opportunity to present those constitutional challenges during his state court proceedings and does not face irreparable harm.

Mr. Rancourt's claims relating to his pending criminal case are DISMISSED.

---

[77] *See World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987) (holding that an exception to abstention applies "under extraordinary circumstances where the danger of irreparable loss is both great and immediate" or when the statute is "flagrantly and patently violative" of the Constitution).

[78] *See Bean*, 986 F.3d at 1134.

[79] Docket 9 at 4–7.

[80] *See Witte v. United States*, 515 U.S. 389, 396 (1995) (explaining that the Double Jeopardy Clause prohibits punishing a defendant twice for the same *criminal* offense).

**F.     The *Rooker-Feldman* Doctrine Bars Mr. Rancourt's Claims that Relate to his Civil Appeal**

Mr. Rancourt's Complaint attacks certain findings and actions in three closed civil proceedings in state court: one case granting a long-term domestic violence protective order against him; one case awarding sole custody of Mr. Rancourt's child to the child's mother and ordering Mr. Rancourt pay child support; and the consolidated appeal in the Alaska Supreme Court that upheld those two orders.  In addition to monetary damages, Mr. Rancourt requests an order requiring Defendants to "void" those decisions.[81]  He also challenges the constitutionality of Alaska Stat. § 25.24.150(G)–(H), which establishes a presumption against awarding child custody to a parent with a history of domestic violence, and requests an order requiring Defendants to "cease removing children under 25.24.150(G)(H)" and declaratory relief that the statute is unconstitutional.[82]

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."[83]  A de facto appeal has occurred "when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment."[84]  If the plaintiff has brought a de facto appeal, then *Rooker-Feldman*

---

[81]  Docket 9 at 30–31.

[82]  *Id.* at 31.

[83]  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

[84]  *Id.* at 1140 (finding that allegations of extrinsic fraud committed by adverse party *on* the state court was not a de facto appeal because it was not an error *by* the state court); *see also Ismail v. Cnty. of Orange*, 693 Fed. App'x 507, 510 (9th Cir. 2017) (finding that allegations of extrinsic fraud that the state court had already addressed were barred by *Rooker-Feldman*).

dictates that the district court cannot review any issues presented in the suit that are "inextricably intertwined" with the de facto appeal.[85]

Although the *Rooker-Feldman* doctrine is generally a narrow exception to this Court's jurisdiction, here, it undoubtedly bars Mr. Rancourt's claim. Mr. Rancourt's allegations against Defendants Bolger, Miller, and Washington challenge the legal rulings and procedural findings in his domestic violence case, child custody case, and related appeal.[86] His claims against Defendants Montgomery-Sythes and Fuentes stem from the state court clerks' administrative procedures as applied to him.[87] His injury stems from alleged "legal errors by the state court," and as a remedy, he seeks relief from that judgment.[88] Mr. Rancourt's Complaint shows that he presented his case in the state court, where Defendants considered and rejected it, and now Mr. Rancourt turns to federal court with hopes for a different outcome. As the Supreme Court explained, the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[89] His suit in federal court is a de facto appeal from the Alaska Supreme Court's consolidated order that upheld the Judges' orders in his domestic violence and child custody cases. As this Court explained in its first Order of Dismissal Without Prejudice,

---

[85] *Kougasian*, 359 F.3d at 1142 (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).
[86] *See* "Background," *supra* at 4–6.
[87] *See* "Background," *supra* at 7.
[88] *See Kougasian*, 359 F.3d at 1140.
[89] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

> [b]ecause this Court is not a court of appeals for state court decisions, the Court may not decide a formerly litigated state case. The proper court to obtain review of a final decision of a state's highest court is the United States Supreme Court. . . . Mr. Rancourt sets forth his version of state court cases and decisions with which he disagrees. This Court, however, may not revisit those cases and decisions. Instead, Mr. Rancourt's remedy is in the appeals' process."[90]

Thus, this Court has no jurisdiction over Mr. Rancourt's claims that are appeals of his domestic violence case, his child custody case, or his civil appeal.

The Court does note that Mr. Rancourt's prayer for relief casts his First Amended Complaint as a constitutional challenge to Alaska Stat. § 25.24.150(G)–(H), which establishes the presumption that a parent with a history of domestic violence may not be awarded custody of a child.[91] The *Rooker-Feldman* doctrine does not "prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation."[92] However, Mr. Rancourt's First Amended Complaint does not present a general or facial challenge to Alaska Stat. § 25.24.150(G)–(H). Rather, as discussed, he seeks a review of his individual case, and, at most, challenges Judge Miller's findings under Alaska Stat. § 25.24.150(G)–(H) as using a "low evidentiary standard" when the Judge used text messages as evidence of domestic violence.[93] This is not a facial or general challenge of the law, and the *Rooker-Feldman* doctrine applies.

---

[90] Docket 5 at 8–10 (citations omitted).
[91] Docket 9 at 30–31.
[92] *Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602, 606 (9th Cir. 2005).
[93] Docket 9 at 25.

Because this Court does not have jurisdiction to hear Mr. Rancourt's de facto appeal of his state court cases, those claims seeking review of his domestic violence case, child custody case, or civil appeal are DISMISSED.

## G.  Further Amendment is Futile

"It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'"[94] Previously, the Court provided an explanation of the deficiencies of Mr. Rancourt's original Complaint.[95]   The First Amended Complaint continues to have the same deficiencies.   As discussed, Mr. Rancourt's claims relate to pending and settled proceedings in state court, with which this Court will not interfere, and he names Defendants who enjoy absolute immunity from his claims.   Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[.]"[96] Therefore, the Court finds that further amendment in the federal court would be futile, and Mr. Rancourt's First Amended Complaint is dismissed without leave to amend.

---

[94] *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (citing *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)).

[95] *See generally* Docket 5.

[96] *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   CONCLUSION

For the above reasons, Mr. Rancourt's First Amended Complaint is **DISMISSED WITH PREJUDICE** in its entirety.

IT IS SO ORDERED this 20th day of April, 2022, at Anchorage, Alaska.


_____/s/ Joshua M. Kindred_____
JOSHUA M. KINDRED
United States District Judge