IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LOREN RANCOURT,

                Plaintiff,

    vs.

HON. CHIEF JUSTICE JOEL
BOLGER, *et al.*,

                Defendants.

Case No. 3:21-cv-00189-JMK

**ORDER GRANTING
DEFENDANTS' MOTIONS TO
DISMISS**

Before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). At Docket 27 is a Motion to Dismiss by Defendant Municipality of Anchorage (the "Municipality") on behalf of itself and Defendant Michael Shaffer (collectively, the "Municipal Defendants"). At Docket 52 is a Motion to Dismiss by Defendants Joel Bolger, Gregory Miller, Pamela Washington, Heather Fuentes, and Ryan Montgomery-Sythe (collectively, the "State Court Defendants"). Mr. Rancourt filed a combined opposition at Docket 60, followed by a Notice at Docket 61. The State Court Defendants replied at Docket 62. For the following reasons, the Court **GRANTS** both motions and Mr. Rancourt's Second Amended Complaint is **DISMISSED WITH PREJUDICE.**

## I.  BACKGROUND

On August 10, 2021, Loren Rancourt, representing himself, filed a Complaint in this Court alleging various civil rights violations related to Alaska state court cases in which he was a party.[1]  On August 17, 2021, the Court dismissed the Complaint without prejudice.[2]  On October 15, 2021, Mr. Rancourt filed his First Amended Complaint ("FAC").[3]  The Court granted leave to amend the FAC,[4] and Mr. Rancourt filed his Second Amended Complaint ("SAC") on December 1, 2021.[5]

On April 20, 2022, this Court, in error, dismissed Mr. Rancourt's FAC rather than his SAC.[6]  Acting sua sponte, the Court vacated its Order, explaining that

> Mr. Rancourt's Second Amended Complaint at Docket 26 fully supersedes his First Amended Complaint, which the Motions at Dockets 19 and 22 had sought to dismiss.  The Court erroneously issued an Order at Docket 29 requesting briefing on Defendants' Motions to Dismiss when it should have denied those motions as moot.  As a result, the Court's Order at Docket 40 addresses Mr. Rancourt's First Amended Complaint, which is non-existent, rather than his Second Amended Complaint.[7]

---

[1]  Docket 1.
[2]  Docket 5.
[3]  Docket 9.
[4]  Docket 25.
[5]  Docket 26.
[6]  Docket 40.
[7]  Docket 48 at 2.

*Rancourt v. Bolger, et al.*                                           Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                        Page 2
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 2 of 27

The Court granted leave to the State Court Defendants to file a Motion to Dismiss in relationship to the SAC.[8]  On September 27, 2022, the State Court Defendants filed the present motion.[9]

Mr. Rancourt brings this action under 42 U.S.C. §§ 1983 and/or 1985[10] and alleges substantially the same claims as in his original Complaint and FAC.  Mr. Rancourt's claims all relate to various state court matters in which he was a party.  The Court takes judicial notice[11] of the following matters as relevant to the SAC:

(1)     A criminal case in Alaska District Court charging Mr. Rancourt with violating a domestic violence protective order, failure to appear, and making false statements under oath, which the Municipality dismissed on December 1, 2022 (the "criminal case")[12];

---

[8] *Id.*  The Municipal Defendants' Motion to Dismiss, filed after Mr. Rancourt amended his complaint, already moves to dismiss the SAC.  *See* Docket 27.

[9] Docket 52.

[10] *See* Docket 26 at 1.  The SAC asserts several other statutes as the basis for this Court's jurisdiction.  *Id.*  To the extent applicable, the Court understands Mr. Rancourt to be alleging violations of these federal laws.

[11] Judicial notice is the court's acceptance of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determine from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b)(2).  This can include matters of public record, such as the existence of court documents.  *See United States v. Chaplin*, Case No. 3:19-cr-00121-SLG, 2021 WL 149677, at *1 (D. Alaska Jan. 15, 2021) (taking judicial notice of the fact of state court records); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

[12] *Mun. of Anchorage v. Rancourt*, 3AN-18-11635CR (Alaska Dist. Ct. Dec. 1, 2022).

*Rancourt v. Bolger, et al.*                                                                     Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                              Page 3
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 3 of 27

(2)     Four petitions for review and one petition for a hearing in the Alaska Court of Appeals, all seeking appellate review judicial actions in his pending criminal case and all of which were denied (the "petitions for review")[13];

(3)     A consolidated appeal in the Alaska Supreme Court ("the civil appeal") that upheld two civil orders from the Alaska District Court:  one granting a long-term domestic violence protective order against Mr. Rancourt (the "domestic violence case"), and one awarding sole custody of Mr. Rancourt's child to the child's mother and ordering Mr. Rancourt to pay child support (the "child custody case").[14]

At the onset, the Court acknowledges that Mr. Rancourt's SAC and related briefing are difficult to interpret.   Mr. Rancourt's first three claims are against the Municipal Prosecutor, Defendant Shaffer, seemingly for pressing charges in the criminal case.  His first claim alleges that Defendant Shaffer violated his "right to life, liberty, and security of persons" by prosecuting him for violating a domestic violence protective order after Mr. Rancourt contacted his child in the wake of a magnitude 7.1 earthquake that hit southcentral Alaska in November 2018.[15]  In essence, Mr. Rancourt argues that enforcing

---

[13] *Rancourt v. Mun. of Anchorage*, No. A13591 (Alaska Ct. App. April 16, 2020); *Rancourt v. Mun. of Anchorage*, No. A13532 (Alaska Ct. App. Dec. 9, 2019); *Rancourt v. Mun. of Anchorage*, No. A13531 (Alaska Ct. App. Dec. 9, 2019); *Rancourt v. Mun. of Anchorage*, No. A13502 (Alaska Ct. App. Oct. 17, 2019); *Rancourt v. Mun. of Anchorage*, No. S17671 (Alaska Feb. 4, 2020).

[14] *Loren R. v. Sharnel V.*, No. S-17198, 2020 WL 4200124 (Alaska July 22, 2020).  The Court understands Mr. Rancourt's reference to "S-1777" in his Complaint as referring to the Memorandum Opinion and Judgment issued in this appeal, which was listed as "MO&J No. 1777."

[15] Docket 26 at 5–6.

the protective order was unconstitutional given the state of emergency in Anchorage.[16]

Claim 2 alleges that Defendant Shaffer violated his due process rights by "conspir[ing] with [Defendant Ryan Montgomery-Sythe] to prevent Plaintiff from access to court" when Defendant Shaffer filed perjury charges against Mr. Rancourt on "information he knew to be false," namely, financial disclosures that Mr. Rancourt provided to the court clerk.[17] Claim 3 alleges that Defendant Shaffer violated his "right to life" by charging him with failure to appear when he missed a pretrial hearing due to "a stay home advisory" after the 2018 earthquake.[18]

Claims 20–24 also relate to Mr. Rancourt's state court cases, this time levied against the Municipality. He alleges that the Municipality, like Defendant Shaffer, violated his "right to life"[19] and "freedom of association"[20] by prosecuting him for violating the protective order when he contacted his child in the wake of the 2018 earthquake. He attacks the underlying ordinance, Anchorage Municipal Code 8.30.105(A)(1), for not having an "emergency exception" that would have allowed him to contact his child after the disaster.[21] Next, Mr. Rancourt asserts a claim for "indentured servitude," alleging that "Defendant Municipality of Anchorage conspired with Defendant Miller to impute child support at a rate not attainable," thereby "creating a debt not reasonably satisfiable."[22] Next, Mr. Rancourt alleges that the Municipality violated his "right to protect life" by

---

[16] *Id.*
[17] *Id.* at 7.
[18] *Id.* at 8.
[19] *Id.* at 30–32.
[20] *Id.* at 33–34.
[21] *Id.* at 31; 37.
[22] *Id.* at 35.

charging him with failure to appear after he missed a court hearing "during a natural disaster involving forest fires."[23] Lastly, he claims the Municipality "has an official custom of preventing access to the court of appeals" which violates his due process rights.[24] In support, Mr. Rancourt explains that he was "force[d]" to fill out financial affidavits in order to have access to the courts (presumably to be a "declared indigent litigant") and that the Municipality charged him with "tampering" with those forms.[25] Mr. Rancourt alleges that these "tampering" charges violate his due process rights because "no 'tampering' can occur from a form having null effect."[26]

Claims 4–6, 8, 9, 15–17, and 19 are against Alaska Superior Court Judge Gregory Miller and relate to Mr. Rancourt's child custody and domestic violence cases.[27] Claim 4 alleges that Defendant Miller violated his "criminal process (USCA VI)" rights by finding "a history of domestic violence" in Mr. Rancourt's child custody case without "notice of the crimes alleged, appointed counsel, ability to call witnesses, a jury or lime [sic] to read discovery" and by "coercing plaintiff to testify without: counsel, notice, or witnesses."[28] Claim 5 alleges that Defendant Miller violated his "right to freedom from cruel and unusual punishment" by "order[ing] the child be removed for at least 9 months, until $1800 was paid & Batterers intervention completed" and requiring conditions for supervised visitation.[29] Claims 6, 8, and 9 allege that Defendant Miller violated

---

[23] *Id*. at 37.
[24] *Id*. at 38.
[25] *Id*.
[26] *Id*.
[27] The SAC does not include a fourteenth claim.
[28] Docket 26 at 9.
[29] *Id.* at 10–11.

Mr. Rancourt's due process rights by making "a paternity declaration without any notice to Plaintiff" and "order[ing] child support with contested paternity"[30]; holding a custody hearing with "no notice of the allegations against him" and "schem[ing] to prevent affirmative defenses" in the child custody case[31]; and "seiz[ing] a child without a probable cause hearing."[32] Claim 15 alleges that Defendant Miller violated his "freedom of speech" when he "found protected speech to be 'Domestic Violence,' having no authority to find D.V.: without 6th amendment protections, using a low evidentiary standard," namely, when Defendant Miller admitted Mr. Rancourt's text messages as evidence against him.[33] Claim 16 alleges that Defendant Miller violated his "freedom from unreasonable seizures" when he "unreasonably seized a child until the 'Domestic Violence' intervention is paid and completed," and ordered that Mr. Rancourt complete a class that cost $1,800.[34] Claim 17 alleges that Defendant Miller violated his "freedom from invasion of privacy" when he "ordered every interaction between Plaintiff and minor child be monitored, in person, by a third party supervisor."[35] Lastly, claim 19 alleges that Defendant Miller violated the Double Jeopardy Clause of the United States Constitution when he "issued criminal punishments based on his 'guilty' conviction," while he was "in criminal trials, had been imprisoned, and faced further criminal prosecution."[36]

---

[30] *Id.* at 12.
[31] *Id.* at 15–16.
[32] *Id.* at 17.
[33] *Id.* at 25.
[34] *Id.* at 26.
[35] *Id.* at 27.
[36] *Id.* at 29.

Claim 7 is against former Alaska Supreme Court Chief Justice Joel Bolger. Mr. Rancourt alleges that Defendant Bolger violated his due process rights by "void[ing] an entire record of preserved legal arguments with no authority to do so," "consipir[ing] to aid fraudulent concealment" by suppressing evidence, and "forc[ing] litigants in criminal hearings to testify in civil hearings" during Mr. Rancourt's civil appeal before the Alaska Supreme Court.[37]

Claims 10 and 12 are against Anchorage District Court Judge Pamela Washington and again relate to his child custody and domestic violence cases. He alleges that Defendant Washington violated his right to "life, liberty and security of persons" by "order[ing] a minor child to the sole care of Sharnel Vale," thereby "prevent[ing] Plaintiff from ensuring physical and emotional wellbeing of minor child," and by "conspir[ing] with Defendant Fuentez and Miller to prevent Plaintiff presenting legitimate safety concerns of minor child to the court."[38] He alleges that Defendant Washington violated his due process rights when she "removed a minor child from Plaintiff's care in a hearing without discovery (fraudulent concealment)."[39]

Claims 11 and 18 are against state court clerk Ryan Montgomery-Sythe and relate to paperwork that Mr. Rancourt attempted to file with the Alaska court system. He alleges that Defendant Montgomery-Sythe violated his due process rights when he "returned appellate petitions with no authority to do so," and "demanded financial

---

[37] *Id.* at 13–14.
[38] *Id.* at 18.
[39] *Id.* at 21.

disclosures to Plaintiff in order to gain access to the Court of Appeals."[40] He alleges that Defendant Montgomery-Sythe violated his right to "security in papers / unreasonable search" when he "ordered a search of Plaintiffs' finances before he could be heard in the Court of Appeals," in violation of "Appellate Rule 209(b)."[41]

Finally, Claim 13 is brought against state court clerk Heather Fuentes and again relates to processing Mr. Rancourt's filings with the Alaska court system. He alleges that Defendant Fuentes violated his right to due process by withholding petitions, motions, and evidence.[42] Specifically, he alleges that she "withheld motions seeking a guardian ad litem, evidence from a DVPO hearing (discovery) and reconsideration of the DVPO," "sent back petitions . . . as being under 'the wrong case number,'" and sent back his notice of appeal.[43]

Mr. Rancourt requests both injunctive relief and damages. For each Defendant, Mr. Rancourt checked the pro se filing form option that "[t]he policy or custom of this official's government agency violates my rights, and I seek injunctive relief" and left blank "[t]his defendant personally participated in causing my injury, and I want money damages."[44] Thus, Mr. Rancourt appears to name all defendants in their official capacity. However, Mr. Rancourt goes on to request monetary damages, in addition to "an order requiring defendant(s) to void 3AN-18-00830CI, S-1777, cease prosecution (3AN-18-

---

[40] *Id.* at 20.
[41] *Id.* at 28.
[42] *Id.* at 23.
[43] *Id.* at 23–24.
[44] *Id.* at 1–4.

11635CR), void 3AN-18-06027CI, [and] cease removing children under 25.24.150(G)(H)."[45]  He also requests a declaration that "[AS] 25.24.150(G)(H) violates rights (criminal punishments, due process, indentured servitude, life, liberty, happiness)" and seeks revisions to various municipal and state laws.[46]

On December 13, 2022, Mr. Rancourt voluntarily dismissed the claims for injunctive relief relating to his criminal case.[47]  He notified the Court that the Municipality dismissed the criminal charges against him and states that "enjoyment of criminal proceedings (in State Court) are no longer required," but he claims that the Municipality "is still liable for damages."[48]

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint because it fails to state a claim upon which relief can be granted.  This means that the facts alleged in the complaint do not amount to a claim under any cognizable legal theory.[49]  To survive a motion to dismiss, the complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[50]  As such, the Court assumes that the facts alleged in the complaint are true and construes them in the light most favorable to the nonmoving party.[51]  "In ruling on a 12(b)(6) motion, a court generally may consider only allegations contained in the pleadings, exhibits attached to the

---

[45] *Id*. at 41–42.
[46] *Id.* at 42.
[47] Docket 61.
[48] *Id*. at 1.
[49] *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).
[50] *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[51] *Id.* (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).

*Rancourt v. Bolger, et al.*                                              Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                           Page 10
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 10 of 27

complaint, and matters properly subject to judicial notice."[52]  However, conclusory statements, unwarranted inferences, and naked assertions of law will not suffice; "they must be supported by factual allegations" to survive a motion to dismiss.[53]

Overall, dismissal for failure to state a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[54]  A court may dismiss a complaint based on an affirmative defense, but only if "the defendant shows some obvious bar to securing relief on the face of the complaint."[55]  In this situation, a motion to dismiss will be granted only if the affirmative defense "raises no disputed issues of fact."[56]

## III.  DISCUSSION

Although Mr. Rancourt cannot simultaneously allege that Defendants acted in their official capacity and their personal capacity, given his pro se status, the Court addresses both scenarios.  In either instance, all claims in the SAC fail as a matter of law.

First, Mr. Rancourt's SAC is based on the actions of prosecutors, judges, and court personnel that were taken as part of their official duties.  To the extent the SAC alleges that these Defendants acted in their personal capacity and seeks damages, all

---

[52]  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[53]  *Ashcroft*, 556 U.S. at 679.

[54]  *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).

[55]  *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense.").

[56]  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Defendants besides the Municipality are immune from suit. With respect to the Municipality, Mr. Rancourt has failed to state a claim for damages under 42 U.S.C. § 1983.

Construing the SAC as alleging that Defendants acted in their official capacity, any claims for injunctive or declaratory relief that relate to his child custody case, domestic violence case, and civil appeal are barred by the *Rooker-Feldman* abstention doctrine. The Court notes that Mr. Rancourt has voluntarily dismissed his request for injunctive relief as it relates to his criminal matter. As no viable claims remain, the SAC is dismissed in its entirety.

## A. Defendants Bolger, Miller, and Washington are Entitled to Absolute Judicial Immunity from Civil Damages Liability

Claims 4–10, 12, 13, 15–17, and 19 allege constitutional violations based on the conduct of judges with whom Mr. Rancourt disagrees. However, judges have absolute immunity from lawsuits for monetary damages if they have acted within their jurisdiction.[57] Since 1872, the Court has recognized that in order to ensure the proper administration of justice, a judge "in exercising the authority vested in him, be free to act upon his own convictions, without apprehension of personal consequences to himself."[58] A judge will not be deprived of immunity because the action taken was in error, done maliciously, or in excess of her authority; rather, she will be subject to liability only when

---

[57] *See Pulliam v. Allen*, 466 U.S. 522, 543 (1984); *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) (holding that judge's order authorizing sterilization of 15-year-old girl without her knowledge was unconstitutional, but judge was immune from suit because order was a judicial act).

[58] *Bradley v. Fisher*, 80 U.S. 335, 347 (1872); *see also Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) ("Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts.") (citing *id.*).

*Rancourt v. Bolger, et al.*
Order Granting Defendants' Motions to Dismiss
Case No. 3:21-cv-00189-JMK
Page 12
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 12 of 27

she has acted in the "clear absence of all jurisdiction or performs an act that is not judicial in nature."[59]   To wit, absolute judicial immunity applies "no matter how erroneous the [alleged] act may have been, how injurious its consequences, how informal the proceedings, or how malicious the motive."[60]

Thus, a judge only lacks immunity if (1) the alleged acts were non-judicial in nature and (2) the judge acted in the "clear absence of all jurisdiction."[61]   Both prongs of this test are construed in favor of immunity.[62]   To determine if a given action is judicial, the court will analyze whether:

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.[63]

To determine if the judge acted within jurisdiction, the court analyzes "whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction."[64]

Here, Mr. Rancourt alleges conduct that is clearly judicial and under the state court's jurisdiction.   His claims against Judge Miller and Judge Washington, described above, all involve specific findings and actions taken by each Judge as the presiding official

---

[59]   *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam).
[60]   *Trapp v. State*, 53 P.3d 1128, 1130 (Alaska 2002) (quoting *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)); *see also Stump*, 435 U.S. at 356–57.
[61]   *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (quoting *Stump*, 435 U.S. at 356–57).
[62]   *Ashelman*, 793 F.2d at 1076.
[63]   *Id*. at 1075–76.
[64]   *Id*. at 1076.

*Rancourt v. Bolger, et al.*                                             Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                          Page 13
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 13 of 27

in Mr. Rancourt's child custody case or domestic violence case. The Alaska Superior Court and the Alaska District Court have subject matter jurisdiction over these cases.[65] The claims against Chief Justice Bolger challenge his findings and conduct in Mr. Rancourt's civil appeal. The Alaska Supreme Court has appellate jurisdiction over Mr. Rancourt's child custody case and domestic violence case.[66] The findings of judges in cases which they preside over are, definitionally, "normal judicial function[s]," and here, the decisions by Judge Washington, Judge Miller, and Justice Bolger clearly were issued under the proper jurisdiction of the Alaska District Court, Alaska Superior Court, and Alaska Supreme Court, respectively.[67]

Even Mr. Rancourt's various conspiracy allegations are considered judicial acts within the court's jurisdiction. In *Ashelman v. Pope*, the Ninth Circuit overruled its previous decision in *Beard v. Udall* that held a judge liable for conspiring to incarcerate a defendant.[68] In overruling that case, the Ninth Circuit noted that the "ultimate act" produced by the conspiracy was a temporary restraining order, which was judicial in nature because the court had jurisdiction to grant such an order.[69] Mr. Rancourt alleges that Defendants Miller, Washington, and Bolger conspired to violate his rights by holding a hearing without notice, issuing certain evidentiary rulings, and making findings in the case that otherwise prevented his ability to be heard. Here, like in *Beard*, the "ultimate acts"

---

[65] *See* AS 22.10.020; AS 22.15.030; *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989) (finding judicial immunity in divorce case because Alaska state courts are courts of general jurisdiction and may preside over divorce proceedings).

[66] *See* Alaska R. App. P. 520.

[67] *See Ashelman*, 793 F.2d at 1075; *New Alaska Dev. Corp.*, 869 F.2d at 1302.

[68] *Ashelman*, 793 F.2d at 1078 (overruling *Beard v. Udall*, 648 F.3d 1264 (9th Cir. 1981)).

[69] *Id*. at 1077.

that resulted from the alleged conspiracies are judicial in nature and within the courts' jurisdictions.[70]

Because Defendants Miller, Washington, and Bolger are entitled to absolute judicial immunity, any claims for damages against them are DISMISSED.

## B. Defendants Fuentes and Montgomery-Sythe are Entitled to Absolute Judicial Immunity from Civil Damages Liability

"Courts have extended absolute judicial immunity from damages actions under 42 U.S.C. § 1983 not only to judges but also to officers whose functions bear a close association to the judicial process."[71] Specifically, absolute judicial immunity extends to those persons appointed by the court to "administer the affairs of litigants."[72] Court officials "who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions."[73] This includes the clerk of court and deputy clerks through whom filing petitions or other court documents is done.[74]

In claims 11, 13, and 18, Mr. Rancourt alleges that Defendants Fuentes and Montgomery-Sythe violated his rights by incorrectly processing various filings or other paperwork in his state court cases.[75] His allegations directly stem from Defendants' actions

---

[70] *Ashelman*, at 1078 ("We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors.").

[71] *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1986).

[72] *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989).

[73] *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quotation omitted) (collecting cases); *see also Ryan v. Bilby*, 764 F.2d 1325, 1328 n.4 (9th Cir. 1985) ("Judicial immunity is not limited to judges. All those who perform judge-like functions are immune from civil damages liability.").

[74] *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987).

[75] Docket 26 at 20, 23–24, 28.

*Rancourt v. Bolger, et al.*                                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                                    Page 15
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 15 of 27

in the course of their employment as court clerks.[76]  Thus, they are entitled to quasi-judicial immunity because they acted as agents of the court and were operating under the court's proper subject matter jurisdiction over Mr. Rancourt's various state court cases.

Because Defendants Fuentes and Montgomery-Sythe are entitled to absolute quasi-judicial immunity, any claims for damages against them are DISMISSED.

## C.    Defendant Shaffer is Entitled to Absolute Prosecutorial Immunity from Civil Damages Liability

In claims 1–3, Mr. Rancourt names Municipal Prosecutor Michael Shaffer as a defendant for bringing charges against him with which he disagrees.[77]  Prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process."[78]  The focus of this inquiry is the nature or function of the prosecutor's activity,[79] and like judicial immunity, prosecutorial immunity is broadly construed.[80]  The Supreme Court has decided that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial"—including "evaluating evidence and interviewing witnesses as he prepares for trial"—are entitled to absolute immunity.[81]  Similarly, "[w]here a prosecutor acts as an

---

[76]  *Id.*
[77]  Docket 26 at 5–8.
[78]  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005).
[79]  *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986).
[80]  *Id.* at 1078.
[81]  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (immunity applied where a prosecutor's administrative error in the plaintiff's specific criminal trial constituted an essential element of the plaintiff's claim).

*Rancourt v. Bolger, et al.*                                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                    Page 16
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 16 of 27

advocate 'in initiating a prosecution and in presenting the state's case,' absolute immunity applies."[82]

Defendant Shaffer has prosecutorial immunity from the SAC's claims for damages. Mr. Rancourt alleges that Defendant Shaffer violated his rights by filing three separate criminal charges against him; he does not allege any conduct that is outside Defendant Shaffer's authority as a prosecutor. Conclusively labeling the prosecution as a "scheme" or "conspiracy" does not pierce Defendant Shaffer's immunity. Indeed, the Ninth Circuit overruled its previous decision in *Beard v. Udall* that held a prosecutor liable for filing charges that he or she knew to be "baseless."[83] In overruling that case, the Ninth Circuit noted that although the prosecutor initiated a prosecution unauthorized by law, "he had performed a quintessentially prosecutorial act—filing criminal charges" and should have been immune.[84] Here, Mr. Rancourt does not even appear to allege that Defendant Shaffer prosecuted him without legal basis; rather, he seems to be arguing that his affirmative defense renders the prosecution unconstitutional.[85] Defendant Shaffer's conduct, as alleged by the SAC, is precisely the type of act protected by prosecutorial immunity.

---

[82] *Ashelman*, 793 F.2d at 1076 (quoting *Imbler*, 424 U.S. at 431).
[83] *Id*. at 1078 (overruling *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981)).
[84] *Id*. at 1077.
[85] *See* Docket 26 at 5–8. Liberally construing Mr. Rancourt's SAC as including a claim for malicious prosecution, this fact alone would warrant dismissal. *See Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (outlining elements for malicious prosecution, including "absence of probable cause" and "malice or a primary purpose other than that of bringing an offender to justice"); *Fabbrini v. City of Dunsmuir*, 631 F.3d 1299, 1301 (9th Cir. 2011) (applying state law to § 1983 claim for malicious prosecution).

Because Defendant Shaffer is entitled to prosecutorial immunity, any claims for damages against him are DISMISSED.

**D.      Mr. Rancourt has Voluntarily Dismissed any Claim for Injunctive Relief as it Relates to his Criminal Case**

Claims 1–3, 11, 18, 20, 21, 23, and 24 relate to Mr. Rancourt's criminal case. In addition to monetary damages, he requests that this Court issue an "order requiring defendant(s) to cease prosecution" in his pending criminal case and order an "emergency exception" to various state laws.[86]

At Docket 61, Mr. Rancourt filed a Notice of Voluntary Dismissal that "enjoinment of criminal proceedings (in State Court) are no longer required."[87] Mr. Rancourt requested leave to amend his SAC to reflect this dismissal, but this is not necessary:  under Federal Rule of Civil Procedure 41(a)(1)(A), the dismissal is effective immediately and without a Court order because it was filed before Defendants served their answer.[88]  Therefore, the Court does not address the merits of Mr. Rancourt's claim for injunctive relief as it relates to his criminal case and reiterates Mr. Rancourt's voluntary dismissal.

**E.      Mr. Rancourt has not Stated a Plausible 42 U.S.C. § 1983 Claim for Damages against the Municipality as it Relates to his Criminal Case**

Although Mr. Rancourt dismissed his requests for injunctive relief as it relates to his criminal case, he maintains that the Municipality is liable for damages as a

---

[86] Docket 26 at 42.
[87] Docket 61 at 1.
[88] *See* Docket 66.

*Rancourt v. Bolger, et al.*                                                                  Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                                              Page 18
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 18 of 27

result of his prosecution. In Claims 1, 20, and 21, Mr. Rancourt alleges that he was deprived of his constitutional right to "life, liberty, and security of persons," "life" and "freedom of association" when he was prosecuted for violating Anchorage Municipal Code 8.30.105(A)(1), Violating a Protective Order.[89] He argues that the ordinance is unconstitutional because it fails to include an "emergency exception" that would have allowed him to contact his child after the 2018 earthquake. The Court liberally construes Mr. Rancourt's SAC as bringing a procedural and/or substantive due process claim against the Municipality for violating of his right to familial association under the First and Fourteenth Amendment of the U.S. Constitution.[90]

To establish municipal liability for civil damages under 42 U.S.C. § 1983, Mr. Rancourt must plead that he (1) suffered a constitutional violation (2) caused by a municipal policy or custom.[91] Here, Mr. Rancourt fails to allege an underlying constitutional violation.

Parents enjoy a protected liberty interest in the relationship with their child, including a custodial interest and a companionship interest.[92] A procedural due process claim may arise when the state interferes with that relationship for the purpose of furthering

---

[89] Docket 26 at 6, 30–34.

[90] *See Smith v. City of Fontana,* 818 F.2d 1411, 1419 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ("[W]hether a particular interference with a liberty interest constitutes a substantive or a procedural due process violation depends on whether the interference was "for purposes of oppression," rather than for the purpose of furthering legitimate state interests.) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

[91] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

[92] *See David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022); *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007); *City of Fontana*, 818 F.2d at 1418.

*Rancourt v. Bolger, et al.*                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                   Page 19
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 19 of 27

a legitimate state interest, usually when removing a child from a parent's care.[93]   But "where the best interest of the child arguably warrants termination of the parent's custodial rights, the state may legitimately interfere so long as it provides 'fundamentally fair procedures.'"[94]   For example, interfering with a parent's custodial right does not violate the Fourteenth Amendment when it is authorized by a valid court order.[95]   A substantive due process claim arises when the interference with the familial relationship "shocks the conscious,"[96] that is, the municipal policy or custom amounts to "deliberate indifference" to the constitutional right.[97]

Mr. Rancourt alleges that the Municipality violated his constitutional right to familial association by enforcing the domestic violence protective order entered against him.  While the protective order interferes with Mr. Rancourt's relationship with his child, it does not violate his constitutional right to familial association.   To the extent that Mr. Rancourt asserts a procedural due process claim, he has not alleged that a municipal policy or custom failed to provide fundamentally fair procedures when enforcing the ordinance.[98]   The conclusory remarks that Defendant Shaffer "schemed" to violate his rights by enforcing the law or that Defendant Shaffer "covered up the fact that Plaintiff has

---

[93]   *City of Fontana*, 818 F.2d at 1419.

[94]   *Id*. (quoting *Santosky v. Kramer,* 455 U.S. 745, 754 (1982)).

[95]   *See David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022); *Keates v. Koile*, 883 F.3d 1228, 1236–37 (9th Cir. 2018); *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294–95 (9th Cir. 2007).

[96]   *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[97]   *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

[98]   *See* Docket 26 at 6, 30–34.

*Rancourt v. Bolger, et al.*                                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                                    Page 20
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 20 of 27

an <u>obligation</u> to protect a child"[99] do not reflect a municipal policy and, more importantly, are insufficient to survive a motion to dismiss.[100]

Mr. Rancourt appears to allege a substantive due process claim by attacking the ordinance itself as overbroad. Here, Mr. Rancourt identifies a municipal policy or custom. But he has not alleged facts that show the ordinance "shocks the conscious" or amounts to a "deliberate indifference" to his familial right. The Superior Court issued a protective order against Mr. Rancourt based on domestic violence charges. Mr. Rancourt violated his protective order, and the Municipality prosecuted him for it. There is no constitutional violation simply because Mr. Rancourt feels he was justified in violating the law. The opposite is true: allowing a domestic abuser to violate the court's protective order any time he deemed there to be an "emergency" arguably would violate the rights of those individuals the order is meant to protect.

Claim 23 alleges that the Municipality violated his "right to protect life" when Defendant Shaffer charged him with failure to appear in violation of Anchorage Municipal Code 8.30.090(a).[101] Again, Mr. Rancourt attacks the ordinance as overbroad because it does not contain an "emergency exception" that would have allowed him to stay home "during a natural disaster involving forest fires."[102] Mr. Rancourt appears to argue

---

[99] Docket 26 at 5 (emphasis in original).

[100] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that conclusory statements without factual support are insufficient to survive a motion to dismiss). To the extent that Mr. Rancourt's claim alleges conduct by Defendant Shaffer taken outside of an official municipal policy, the Municipality cannot be held liable. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).

[101] Docket 26 at 37.

[102] *Id.*

that an air quality advisory warning issued by the Municipality should have caused the state court to cancel its hearings, or at least excuse his absence. Mr. Rancourt has not alleged a constitutional violation. The Municipal ordinance does not "shock the conscious" or show "deliberate indifference" to his health or liberty.[103] As with his other claims, the ordinance is not unconstitutional simply because Mr. Rancourt he feels he was justified in breaking it.

Claim 24 alleges that the Municipality violated his due process rights when Defendant Shaffer charged him with making a false statement under oath in violation of Anchorage Municipal Code 8.30.080(A)(6).[104] This claim fails because Mr. Rancourt has not identified a municipal policy or custom that caused a deprivation of his constitutional rights. He alleges that Defendant Montgomery *violated* a state court rule in requiring Mr. Rancourt to fill out financial affidavits, nullifying the perjury charges (which, presumably, were based on false statements contained in those affidavits).[105] He does not cite a custom or practice of the Municipality; rather, any violation of his due process rights would be a result of Defendant Montgomery's actions as a court employee. Mr. Rancourt attempts to remedy this by stating that "Defendant Municipality of Anchorage has an official custom of preventing access to the court of appeals"[106] but does not identify any custom, and the facts alleged give rise to the opposite conclusion.[107]

---

[103] Further, Mr. Rancourt's allegations relate to actions taken by the state court, namely, that it did not excuse him from his hearing.

[104] Docket 26 at 38.

[105] *Id.*

[106] *Id.*

[107] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that conclusory statements without factual support are insufficient to survive a motion to dismiss).

Because Mr. Rancourt has not alleged that a municipal policy or custom violated his constitutional rights, claims 20, 21, 23, and 24 against the Municipality are DISMISSED.

## F.     The *Rooker-Feldman* Doctrine bars all of Mr. Rancourt's Claims that Relate to his Domestic Violence Case, Child Custody Case, and Civil Appeal

Claims 4–10, 12, 13, 15– 17, 19, and 22 attack certain findings and actions in three civil proceedings in state court:  one case granting a long-term domestic violence protective order against Mr. Rancourt; one case awarding sole custody of Mr. Rancourt's child to the child's mother and ordering Mr. Rancourt pay child support; and the consolidated appeal in the Alaska Supreme Court that upheld those two orders.  In addition to monetary damages, Mr. Rancourt requests an order requiring Defendants to "void" those decisions.[108]   He also challenges the state law's presumption against awarding child custody to a parent with a history of domestic violence, and he requests an order requiring Defendants to "cease removing children under 25.24.150(G)(H)" and declaring that the statute is unconstitutional.[109]

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."[110]   A de facto appeal has occurred "when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the

---

[108]   Docket 26 at 42.
[109]   *Id.*
[110]   *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

*Rancourt v. Bolger, et al.*                                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                              Page 23
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 23 of 27

state court judgment."[111]   If the plaintiff has brought a de facto appeal, then *Rooker-Feldman* dictates that the district court cannot review any issues presented in the suit that are "inextricably intertwined" with the de facto appeal.[112]

Although the *Rooker-Feldman* doctrine generally is a narrow exception to this Court's jurisdiction, here, it undoubtedly bars Mr. Rancourt's claims.   Claims 4–10, 12, 15–17, and 19 against Defendants Bolger, Miller, and Washington challenge the legal rulings and procedural findings in his domestic violence case, child custody case, and related appeal.[113]   Claim 13 against Defendant Fuentes stems from the state court's administrative procedures as applied to him.[114]   Claim 22 against the Municipality attacks Defendant Miller's order that Mr. Rancourt pay child support.[115]   The injury stems from alleged "legal errors by the state court," and as a remedy, Mr. Rancourt seeks relief from that judgment.[116]   The facts alleged by Mr. Rancourt show that he presented his case in the state court, where Defendants considered and rejected it.   Now, Mr. Rancourt turns to federal court with hope for a different outcome.   As the Supreme Court explained, the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

---

[111] *Id.* at 1140 (finding that allegations of extrinsic fraud committed by adverse party *on* the state court was not a de facto appeal because it was not an error *by* the state court); *see also Ismail v. Cnty. of Orange*, 693 Fed. App'x 507, 510 (9th Cir. 2017) (finding that allegations of extrinsic fraud that the state court had already addressed were barred by *Rooker-Feldman*).

[112] *Kougasian*, 359 F.3d at 1142 (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).

[113] Docket 26 at 9–19, 21–22, 25–27, 29.

[114] *Id.* at 23–24.

[115] *Id.* at 35–36.

[116] *See Kougasian*, 359 F.3d at 1140.

commenced and inviting district court review and rejection of those judgments."[117]  His

suit in federal court is a de facto appeal from the Alaska Supreme Court's consolidated

order that upheld the Judges' orders in his domestic violence and child custody cases.  As

this Court explained in its first Order of Dismissal Without Prejudice,

> "[b]ecause this Court is not a court of appeals for state court
> decisions, the Court may not decide a formerly litigated state
> case.  The proper court to obtain review of a final decision of a
> state's highest court is the United States Supreme Court. . . .
> Mr. Rancourt sets forth his version of state court cases and
> decisions with which he disagrees.  This Court, however, may
> not revisit those cases and decisions.  Instead, Mr. Rancourt's
> remedy is in the appeals' process."[118]

Thus, this Court has no jurisdiction over Mr. Rancourt's claims that are appeals of his

domestic violence case, his child custody case, or his civil appeal.

The Court does note that Mr. Rancourt's prayer for relief casts his SAC as a

constitutional challenge to AS 25.24.150(G)–(H), which establishes the presumption that

a parent with a history of domestic violence may not be awarded custody of a child.[119]  The

*Rooker-Feldman* doctrine does not "prohibit a plaintiff from presenting a generally

applicable legal challenge to a state statute in federal court, even if that statute has

previously been applied against him in state court litigation."[120]  However, Mr. Rancourt's

SAC does not present a general or facial challenge to AS 25.24.150(G)–(H).  Rather, as

discussed, he seeks a review of his individual case, and, at most, challenges Judge Miller's

---

[117] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[118] Docket 5 at 8–10 (citations omitted).
[119] Docket 26 at 42.
[120] *Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602, 606 (9th Cir. 2005).

*Rancourt v. Bolger, et al.*                                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                                                  Page 25
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 25 of 27

findings under AS 25.24.150(G)–(H) as using a "low evidentiary standard" when the Judge used text messages as evidence of domestic violence.[121] This is not a facial or general challenge of the law, and the *Rooker-Feldman* doctrine applies.

Because this Court does not have jurisdiction to hear an appeal from Mr. Rancourt's state court matters, claims 4–10, 12, 13, 15– 17, 19, and 22 are DISMISSED.

## G.    Further Amendment is Futile

"It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'"[122] The Court provided an explanation of the deficiencies in Mr. Rancourt's original Complaint[123] and has allowed amendment twice. The SAC continues to have the same deficiencies as both the original and FAC. As discussed, Mr. Rancourt's claims relate to settled proceedings in state court, with which this Court will not interfere, and he names Defendants who enjoy absolute immunity from his claims. Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[.]"[124] Therefore, the Court finds that further amendment in the federal court would be futile, and Mr. Rancourt's SAC is dismissed without leave to amend.

---

[121] Docket 26 at 25.

[122] *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (citing *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)).

[123] *See generally* Docket 5.

[124] *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   CONCLUSION

With the exception of Mr. Rancourt's claims for injunctive relief relating to his criminal case, which he voluntarily dismissed, the Seconded Amended Complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED this 18th day of January, 2023, at Anchorage, Alaska.


*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Rancourt v. Bolger, et al.*                                    Case No. 3:21-cv-00189-JMK
Order Granting Defendants' Motions to Dismiss                              Page 27
Case 3:21-cv-00189-JMK   Document 68   Filed 01/19/23   Page 27 of 27